UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

AMERICAN CIVIL LIBERTIES UNION and
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION,

*Plaintiffs*,

v.

DEPARTMENT OF JUSTICE including its
components the OFFICE OF THE ATTORNEY
GENERAL, the OFFICE OF THE DEPUTY
ATTORNEY GENERAL, and the OFFICE OF
LEGAL POLICY,

*Defendant*.

Case No: 1:26-cv-6158

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

*et seq.*, seeking to compel the immediate release of records pertaining to the Proposed Rule for

State Capital Counsel Systems, RIN 1105-AB80, 91 Fed. Reg. 12525 ("Proposed Rule") held by

the Department of Justice ("DOJ") and its following components: Office of the Attorney General

("OAG"), Office of the Deputy Attorney General ("DOAG"); and the Office of Legal Policy

("OLP").

2. This Proposed Rule concerns the certification of States' capital counsel

mechanisms for indigent prisoners under 28 U.S.C. § 2265 and 28 C.F.R. Part 26. Certification

under these provisions allows a State to secure fast-track litigation of habeas petitions in capital

cases in return for demonstrating that the State provides a system of adequate representation in

state post-conviction cases.

3. Specifically, *if* a State meets § 2265's requirements to guarantee death-sentenced indigent defendants the timely appointment and adequate compensation of competent post-conviction counsel and reasonable litigation expenses for their post-conviction proceedings, *then* the State can claim the benefit of special fast-track procedures that greatly shorten the statute of limitations for federal habeas petitions, significantly expedite the federal habeas proceedings, and sharply curtail the scope of federal habeas review of state judgments. *See* 28 U.S.C. § 2265.

4. Under existing DOJ regulations, state requests for certification under this scheme are published in the Federal Register and subject to public comment. *See* 28 C.F.R. § 26.23.

5. On March 16, 2026, the Attorney General published notice of the Proposed Rule for determining State certification applications. Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525 (proposed March 16, 2026) (to be codified at 28 C.F.R. pt. 26) ("Notice of Proposed Rule"). Among other changes, the Attorney General's Proposed Rule undertakes to create an entirely *ex parte* certification process, without any opportunity for habeas petitioners, their attorneys, or other interested members of the public to comment on or oppose a State's assertion that it has established an adequate post-conviction counsel mechanism. *Id*. Sections 26.21 and 26.22 of the Proposed Rule also rescind any definition or standards for key provisions of § 2265, including standards for competent counsel, adequate compensation, and reasonable litigation expenses. 92 Fed. Reg. 12525, 12531-32. This is a significant departure from the administrative procedures under both the existing rule for the Certification of State Capital Counsel Systems, 28 C.F.R. pt. 26 ("2013 Final Rule") as well as the prior versions of the rule.

6. The records sought are a matter of significant public interest because the actions raise concerns about the appearance of impartiality and whether the Agency is attempting to

faithfully adhere to its statutory mandate. The Proposed Rule threatens to eliminate the due process rights of state prisoners sentenced to death and their counsel during the administrative process and attempts to make it far easier for States to remove federal habeas review of all the legal challenges brought by state prisoners to their death sentences, including claims of innocence and prosecutorial misconduct. The DOJ has actively encouraged State Attorneys General to submit comments on the Notice of Proposed Rulemaking to influence the Proposed Rule's adoption. Further, for those States with pending application for certification, the Acting Attorney General engaged in *ex parte* communications on March 27, 2026, inviting them to select whether they wished the DOJ to assess their States' applications for certification under the existing 2013 Final Rule or any new rule that is promulgated from the current rulemaking proceeding.

7. It is critical for the public to be informed of the activity of the Attorney General and the DOJ to enable the public to hold the government accountable for further expansion of the use of the death penalty as well as the alleged bias and conflicts of interest on behalf of the Attorney General. In the current rulemaking alone, over 4,400 public comments were submitted, nearly all in opposition to the Proposed Rule. With such significant public engagement on the Attorney General's rulemaking under Chapter 154, the public has an urgent need to know whether the promulgation of the current 2026 Proposed Rule has been so tainted by bias as to raise significant questions concerning the integrity of the Attorney General and the DOJ's conduct. Indeed, the DOJ granted expedited processing for this request before various components, reflecting the urgency to inform the public of activities that call into question the integrity of government officials' conduct.

8. The DOJ's close relationship with current and former state prosecutors raises concerns about the appearance of impartiality in the Attorney General's rulemaking for the certification process. These communications occurred after publication of the notice of the Proposed Rule, when the Attorney General was required to conduct rulemaking through the public docket rather than through unpublished *ex parte* communications with regulated parties seeking regulatory benefits.

9. This inappropriate communication is even more glaring considering that capital defendants and their counsel, along with other interested parties, were unaware of the communications between the DOJ and State Attorneys General.

10. The rulemaking process thus far appears to have been tilted to satisfy the prosecutorial concerns of Attorney General and state prosecutors—to the exclusion of other interested and knowledgeable parties. Yet, the full extent of the DOJ's *ex parte* communications remains unknown.

11. The requested records will shed light on the nature and extent of Attorney General and the DOJ's bias in favor of State Attorneys General and state prosecutors—and against capital defendants and their counsel— in deciding to promulgate rules that will expedite certification determinations and curtail any meaningful review of State certification decisions under § 2265. They will reveal the degree to which the Attorney General and the DOJ are actively promulgating an outcome-driven rule that reaches a predetermined certification decision in favor of States—rather than serving as a neutral decisionmaker and fairly evaluating feedback on its Proposed Rule.

12. In short, the records sought through this request will help the public understand whether the Attorney General and the DOJ's conduct is so tainted by bias that it calls into question whether the public can, and should, have confidence in the government's integrity.

13. Plaintiffs the American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "ACLU" or "Plaintiffs"), submitted a FOIA request to the DOJ on June 2, 2026, seeking release of records concerning the Proposed Rule. *See* Exhibit A ("FOIA Request"). To date, the DOJ has not processed the request nor released any responsive records, notwithstanding the DOJ's grant of expedited processing for the request on June 9, 2026, and FOIA's requirement that agencies make a determination with respect to requests within the statutory timeframes.

14. Because the public deserves to know how the DOJ came to its decision to so radically change § 2265's State certification process and the role of impermissible bias in the Attorney General and DOJ's decision making, Plaintiffs now ask the Court for an injunction requiring Defendant to process their FOIA request and immediately release responsive records, and other relief as appropriate.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(b). This Court has jurisdiction to grant declaratory, injunctive, and further necessary relief pursuant to 28 U.S.C. §§ 2201-2202.

16. Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because this is a civil action in which Defendant is a federal agency, Plaintiffs' principal places of business are in New York, New York, within this district, and no real property is involved in this action.

5

**PARTIES**

17. Plaintiff American Civil Liberties Union is a nationwide, non-profit, non-partisan 26 U.S.C. § 501(c)(4) organization with more than four million members, activists and supporters, incorporated in the District of Columbia and with its principal place of business in New York, New York. The ACLU's mission is to maintain and advance civil rights and civil liberties and to ensure that the U.S. government acts in compliance with the Constitution and laws of the United States. The ACLU is also committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. The ACLU has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

18. Plaintiff American Civil Liberties Union Foundation is a separate 501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties. It is incorporated in New York State, and its principal place of business is in New York City.

19. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation together are referred to as the "ACLU."

20. Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1) and 5 U.S.C. § 702. The Office of

6

the Attorney General, Office of the Deputy Attorney General, and the Office of Legal Policy, from which Plaintiffs requested records, are components of the DOJ.

## STATUTORY AND LEGAL FRAMEWORK

21. "The Freedom of Information Act was enacted to facilitate public access to government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989)). Its basic purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and hold the governors accountable to the governed." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Consistent with this purpose, the FOIA statute creates a "strong presumption in favor of disclosure [and] places the burden on the agency to justify the withholding of any requested documents." *Ray*, 502 U.S. at 173.

22. FOIA requires federal agencies to disclose records in response to a request by a member of the public, unless those records fall within one of nine narrow statutory exemptions. 5 U.S.C. §§ 552(a)(3)(A), (b)(1)-(9). FOIA also requires an agency to make an adequate search for responsive records that is "reasonably calculated to discover the requested documents." *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999) (quoting *SafeCard Servs., Inc. v. Sec. and Exchange Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

23. An agency must make a "determination" as to a FOIA request within twenty working days. 5 U.S.C. § 552(a)(6)(A)(i). Upon request, an agency may also granted expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) when there is a "compelling need" for these records, including when the information is "urgen[tly]" needed by an organization primarily engaged in disseminating information to "to information the public concerning actual or alleged Federal Government activity." Further, under 5 U.S.C. § 552(a)(6)(E)(i)(II) and the relevant DOJ

regulations, the agency may also grant expedited processing if the request involves a loss of substantial due process right or the requested records involve a matter of widespread and exceptional media interest that raises questions about the integrity of the DOJ's action. 28 C.F.R. § 16.5(d)(iii), (iv) (2014). Upon a grant of expedited processing, the agency "shall process" the request "as soon as practicable." 5 U.S.C. § 522(A)(6)(E)(iii).

24. In "unusual circumstances," an agency may extend its processing deadline generally by no more than ten working days, but it must provide "written notice . . . setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B); 28 C.F.R. §16.5(c). At a minimum, a "determination" must "indicate within the relevant time period the scope of the documents [the agency] will produce and the exemptions it will claim with respect to any withheld documents." *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 182-83 (D.C. Cir. 2013) (Kavanaugh, J.); *see also Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp.3d 810, 815 (S.D.N.Y. 2017).

25. If the agency fails to comply with a request within the statutory time period, a FOIA requester is deemed to have exhausted its administrative remedies and can proceeding directly to the district court, where the agency must show "exceptional circumstances" justifying its untimeliness and due diligence in remedying the violation. 5 U.S.C. § 552(a)(6)(C). Per the FOIA statute, "the term 'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section . . . ." 5 U.S.C. § 552(a)(6)(C)(ii).

26. A district court has jurisdiction to enjoin the agency from withholding records and order production of records that are subject to disclosure. 5 U.S.C. § 552(a)(4)(B).

## FACTS

27. Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Public Law 104-132, section 107, 110 Stat. 1214, 1221-1226 (1996), established a *quid pro quo* arrangement: a State provides indigent defendants sentenced to death with a mechanism for competent post-conviction counsel and adequate litigation expenses in exchange for receiving the benefit of special expedited and narrowed federal habeas review by Article III courts.

28. To qualify for the fast-track procedures for federal habeas review in Chapter 154, a State must meet the requirements for an adequate post-conviction counsel mechanism in capital cases. 28 U.S.C. § 2265.

29. Originally, under AEDPA, federal courts conducting habeas reviews had the duty of deciding whether a State was eligible for the expedited procedures by having met Chapter 154's requirements. Pub. L. No. 104-132, § 107(a), 110 Stat. 1214. Since 1996, no court has found that a State was entitled to apply Chapter 154's fast-track procedures against a specific individual in a federal habeas review.

30. In 2006, Congress amended the law and transferred the decision-making authority to "certify" that a State satisfies Chapter 154 from Article III courts in federal habeas review to the U.S. Attorney General.  *See* USA PATRIOT Improvement and Reauthorization Act of 2005, Pub. L. No. 109-177, § 507(c)(1) (2006).

31. Between 2006 and 2024, only two States applied for certification, Arizona and Texas. On January 17, 2025, the U.S. Attorney General denied Arizona's application for certification, having withdrawn a prior determination that Arizona did qualify. Texas's application, originally dated March 11, 2013, remains pending.

32. On January 20, 2025, President Trump issued Executive Order 14164, "Restoring the Death Penalty and Protecting Public Safety," seeking to expand the use of the death penalty in the United States. *See* 90 Fed. Reg. 8463 (Jan. 30, 2025) ("Executive Order"). Among other things, section 4(b) of the Executive Order directed the Attorney General "to take all appropriate action to approve or deny any pending request for certification made by any State under 28 U.S.C. § 2265." *See id*. at 8464.

33. In a February 5, 2025, Memorandum, *Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions*, former U.S. Attorney General Pamela Bondi Attorney General Bondi pledged to "assist States in prosecuting capital crimes and implementing death sentences," including by helping to "ensure the states have sufficient supplies and resources to impose the death penalty" and "promptly" addressing pending requests for certification.

34. On May 15, 2025, former Assistant Attorney General Aaron Reitz sent a letter to State Attorneys General encouraging States' applications for certification and pledging that the OLP "is ready to assist should your state choose to navigate this process." The Reitz letter instructed states "[t]o get certified, submit a written package to OLP Senior Counsel Alida Kass…." This letter and instruction underscored the DOJ's biased interest in both the application by and certification of states. The OLP was candid that to "get certified" the States just needed to submit the applications. When the Reitz Letter was sent on May 15, 2026, the Office of the Attorney General for Texas was already engaged in *ex parte* communications with the OLP about its pending application, as detailed below. At least six additional States responded to the letter with applications for certifications.

35. On February 18, 2026, Deputy Assistant Attorney General Lanora C. Pettit of the DOJ's Office of Legal Counsel published a Memorandum Opinion for the Attorney General titled "Reconsidering State Procedures for Appointment of Competent Counsel in Postconviction Review of Capital Sentences." *See* Slip. Op. (Feb. 18, 2026), https://www.justice.gov/olc/media/1428251/dl.  In the Memorandum, the Deputy Assistant Attorney General indicated that the notice-and-comment rulemaking process was underway for the Proposed Rule at least by early February 2026, before the date of the OLC's February 18, 2026 Opinion, if not earlier.

36. On March 16, 2026, the Attorney General published notice of a proposed new rule for determining State certification applications. Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525 (proposed March 16, 2026) (to be codified at 28 C.F.R. pt. 26) ("Notice of Proposed Rule"). Among other changes, the Attorney General's Proposed Rule undertakes to create an entirely *ex parte* certification process, without any opportunity for habeas petitioners, their attorneys, or other interested members of the public to comment on or oppose a State's assertion that it has established an adequate post-conviction counsel mechanism. *Id*.

37. The Texas petition, initially submitted on March 11, 2013 and supplemented on December 18, 2017 remains pending. At least five additional States applied for certification: Tennessee (submitted on June 6, 2025); Alabama (submitted on April 24, 2025); Mississippi (submitted on October 6, 2025); Ohio (submitted on November 6, 2025); and Florida (submitted on December 16, 2025). Oklahoma submitted an application on February 25, 2026 but as explained below, withdrew it without prejudice on April 21, 2026, in response to the DOJ's March 27, 2026 Letter.

38. Defendants published three of these applications for public comment on various dates, following varied periods of time after receipt of applications. The application for Texas was last open for public comment on December 27, 2017, and applications for Tennessee and Alabama were published for public comment on August 7, 2025. The Office of Legal Policy posted the applications of Florida, Mississippi, Ohio, and Oklahoma on March 25, 2026 on its website.[1] On April 29, 2026, the DOJ published a Notice of Requests for Certification of Capital Counsel Mechanisms of Florida and Mississippi, opening the 60-day public comment for those States' certification applications. Docket No. OLP184, Notice of Requests for Certification of Capital Counsel Mechanisms of Florida and Mississippi, 91 Fed. Reg. 23116 (April 29, 2026), https://www.govinfo.gov/content/pkg/FR-2026-04-29/pdf/2026-08319.pdf.

39. On April 14, 2026, the Office of the Federal Public Defender Middle District of Tennessee (TNMD) submitted a Request for *Ex Parte* Communications in Docket No. OAG198, RIN 1105-AB80 as part of the Notice of Proposed Rulemaking for the Certification Process for State Capital Counsel Systems, 91 Fed. Reg. 12525. Comment ID DOJ-OAG-2026-0034-0019, https://www.regulations.gov/comment/DOJ-OAG-2026-0034-0019. The TNMD requested the following:

    a.   All written communications between Department officials and any federal and non-federal parties or entities concerning the proposed Chapter 154 regulation occurring after publication of the Notice of Proposed Rulemaking;

---

[1] *See* Office of Legal Policy | Pending Requests & Final Decisions, *see* https://perma.cc/37T9-5YRE.

b.  Written summaries of all oral communications concerning the proposed

rule, including meetings, telephone calls, or information consultations; and

c.  Records identifying all DOJ personnel who participated in such

communications and the date on which they occurred.

40. On May 5, 2026, the DOJ published a response to the TN MD dated May 1, 2026, on Regulations.gov in Docket No. OAG198, RIN 1105-AB80. DOJ, Response to FPD MD Tenn Request for Disclosure for *Ex Parte* Communications, DOJ-OAG-2026-0034-0019 (posted May 5, 2026). The DOJ stated that: "We are not aware of any information or communications, as described in your letter, about the rulemaking on state certification procedures." The DOJ acknowledged that it "did, however, recently send letters to the offices of the state attorneys general with pending certification requests to address the timing of the Attorney General's decisions on those requests." The DOJ stated that the letters "mentioned the rulemaking in passing" and provided a webpage address for accessing them.

41. The webpage linked to six letters that Assistant Attorney General Daniel E. Burrows sent on March 27, 2026 to the Attorneys General for Alabama, Florida, Mississippi, Ohio, Oklahoma, and Tennessee—states with pending applications for certification—and published on its website more than one month later, on April 30, 2026. *See*, DOJ OLP, Pending Requests & Final Decisions, https://www.justice.gov/olp/pending-requests-final-decisions ("March 27, 2026 Letters"). In the March 27, 2026 Letters, Assistant Attorney General Burrows wrote that since his confirmation in February 2026, he has "prioritized chapter 154 certifications." *See*, *e.g.*, Letter from Daniel E. Burrows, Assistant Attorney General to The Honorable Jonothan Skrmetti, Attorney General, State of Tennessee (March 27, 2026), https://www.justice.gov/olp/media/1438826/dl?inline.

42. The March 27, 2026 Letters gave the State Attorneys General individualized notice of the March 16, 2026 Notice of Proposed Rulemaking and encouraged them to submit comments. The letters informed the Attorneys General when OLP intended to complete its review of their States' pending certification applications and when the Attorney General hoped to issue a determination. Through the letters, OLP invited the Attorneys General to choose the regulations that would be applicable to the determination of their States's application—either the current 2013 Rule or any new rules resulting from the current rulemaking process. Finally, the letter emphasized OLP's "commitment to justice" by "the carrying out of lawful death sentences at the state level."

43. The Attorney General for State of Oklahoma responded on April 21, 2026, and withdrew the Oklahoma's application without prejudice to re-submitting it after the promulgation of any new rule. The DOJ has not published any other communication from State Attorneys General in response to the March 27, 2026 Letters.

44. During the sixty-day notice-and-comment period for the Proposed Rule, Doc. No. DOJ-OAG-2026-0034, the DOJ denied requests for extensions from at least twelve different organizations seeking additional time and information to enable them to submit a meaningful comment. Accordingly, the comment period closed on May 15, 2026 at 11:59pm EST.

45. On July 10, 2026 the DOJ published a Notice in the Federal Register certifying Tennessee's capital counsel mechanisms for indigent prisoners under Chapter 154 and setting an effective date for this certification of July 1, 1997. Certification of Tennessee Capital Counsel Mechanism, 91 Fed. Reg. 42761 (July 10, 2026) ("Tennessee Certification").

14

**The FOIA Request to the DOJ**

46. On June 2, 2026, the ACLU submitted a FOIA request to the DOJ (Exhibit A) seeking records held by held by the Attorney General as well as the DOJ and its components (the Office of the Attorney General, Office of the Deputy Attorney General, and the Office of Legal Policy) created from March 14, 2026, to the present, falling within the following categories:

    a.  Any internal communications within the DOJ and within or between the DOJ components concerning the promulgation of the 2026 Proposed Rule; ("internal DOJ communications");

    b.  Any correspondence or communications received or sent by the DOJ to State Attorneys General, including the State Attorney General and any agent or officer of the Office of the State Attorney General ("State AGs"), in response to letters sent by the DOJ informing the States of the 2026 Proposed Rule, including the March 27, 2026 Letters ("State AG correspondence");

    c.  Any communications between the DOJ and its components with any external party concerning the promulgation of the 2026 Proposed Rule ("external DOJ communications"); and

    d.  Any appointment calendars held by the DOJ or its components reflecting the times and dates of any internal or external meetings where the promulgation of the 2026 Proposed Rule was discussed (including a complete list of attendees), as well as phone or virtual internal or external meeting records wherein the promulgation of the 2026 Proposed Rule was

discussed (including a complete list of participants), collectively

("administrative records of communications").

47. The ACLU requested expedited processing of the FOIA Request pursuant to 5 U.S.C. § 552(a)(6)(E) as well as 28 C.F.R. § 16.5(e)(iii), (iv) (2014). *See* Exhibit A at 5-13. The ACLU explained that it is an organization primarily engaged in disseminating information to the public about this actual or alleged government activity. *Id.* at 9-11.

48. The ACLU also requested a fee waiver under 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.R.F. § 16.10(k)(1). *Id.* at 13-14.

**The DOJ's Response to the FOIA Request**

49. Under the FOIA statute, the DOJ is obligated to respond to FOIA requests within 20 working days, 5 U.S.C. § 552(a)(6)(A), making the DOJ's response deadline July 1, 2026.

50. By letter dated June 9, 2026, the DOJ acknowledged receipt of the FOIA Request (Exhibit B) and granted the ACLU's request for expedited processing. *See* Exhibit B at 1. The DOJ also invoked the 10-day extension of time permitted under 5 U.S.C. § 552(a)(6)(B), which lapsed on July 17, 2026. *Id*. The DOJ did not indicate the scope of the documents it would produce or whether it would claim any exemptions with respect to any withheld documents. The DOJ also deferred its decision on the request for a fee waiver. *Id*. at 2.

51. Despite pressing and widespread public interest in both the Proposed Rule for the Certification Process for State Capital Counsel Systems and the DOJ's encouragement of State Attorneys General to comment on and influence the Proposed Rule, the DOJ still has not released any records in response to the FOIA Request.

16

## CLAIMS FOR RELIEF

### CLAIM I
### Violation of 5 U.S.C. § 552
### Failure to Process Plaintiff's Request Expeditiously and as Soon as Practicable

52. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

53. Plaintiffs properly submitted the FOIA Request on June 2, 2026, requesting records within the possession, custody, and control of the Defendant.

54. Defendant granted expedited processing and was obligated under 5 U.S.C. § 552(a)(6)(A), (B) and (E) to produce records responsive to the FOIA Request on an expedited basis and as soon as practicable.

55. Defendant failed to issue a response to Plaintiffs' FOIA request, including a determination of whether to comply with the request and the reasons therefor, in the expedited time provided under 5 U.S.C. § 522(a)(6)(E) (less than 20 days, excluding Saturdays, Sundays, and legal public holidays) or within the time permitted in certain unusual circumstances pursuant to 5 U.S.C. § 522(a)(6)(B) and 28 C.F.R. § 16.5(c) (10 additional working days).

56. Defendant's failure to disclose all responsive records within the statutory time period violates, at a minimum, 5 U.S.C. § 552(a)(6)(A), (B), and (E) and the corresponding regulations.

### CLAIM II
### Violation of 5 U.S.C. § 552
### Failure to Conduct an Adequate Search and to Disclose Responsive Records

57. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

58. Defendant is obligated under 5 U.S.C. § 552(a)(3) to conduct a reasonable search for records responsive to the FOIA request and to promptly produce those records to Plaintiffs.

59. Upon information and belief, Defendant has not conducted any search for records responsive to the FOIA request. Defendant has not produced any records responsive to the FOIA request. Plaintiffs have a legal right to obtain such records, and no legal basis exists for Defendant's failure to search for them.

60. Defendant's failure to conduct a reasonable search and disclosure all records responsive to the FOIA request violates, at a minimum, 5 U.S.C. § 552(a)(3), and the corresponding regulations

**CLAIM III**
**Violation of 5 U.S.C. § 552**
**Improper Withholding of Agency Records**

61. All of the foregoing allegations are repeated and realleged as though fully set forth herein.

62. Under 5 U.S.C. § 552(a)(3)(A), Defendant is obligated to make properly requested records promptly available to a requester. Plaintiffs have a legal right under FOIA to the timely search and release of responsive, non-exempt agency records in response to the FOIA Request.

63. Upon information and belief, Defendant currently has possession, custody, or control of the requested records. To date, Defendant has not made any records available to Plaintiffs, nor produced a *Vaughn* index.[2]

---

[2] *Vaughn* indices "describe the justification for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the records nor by evidence of agency bad faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009) (quoting *Larson v. Dep't of State*, 565

64. Defendant's withholding of requested records in its possession that are not exempt from disclosure under 5 U.S.C. § 552(b) violates, at a minimum, 5 U.S.C. § 552(a)(3)(A) and the corresponding regulations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

a)      Assume jurisdiction over this action;

b)      Declare unlawful Defendant's failure to make a determination on the FOIA Request within the statutory expedited time frame, failure to conduct an adequate search for the records requested by Plaintiffs, and failure to disclosure the records requested by Plaintiffs;

c)      Order Defendant to conduct a full, adequate, and expeditious search for the requested records;

d)      Order Defendant to expeditiously process and disclose all responsive, nonexempt records, and enjoin Defendant from improperly withholding the requested records;

e)      Award Plaintiffs costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E), the Equal Access to Justice Act, and any other applicable statute or regulation; and

f)      Grant such further relief as the Court deems just, equitable, and proper.

---

F.3d 857, 862, 870 (D.C. Cir. 2009)). The indices are named after the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

19

Dated: July 21 2026

Respectfully submitted,


/s/ Gitanjali S. Gutierrez

Gitanjali S. Gutierrez, N.Y. 4183935
Alex Valdez, N.Y. 568026*
**ACLU FOUNDATION**
125 Broad Street
18th Floor
New York,. N.Y. 10004
Tel: 212-549-2500
ggutierrez@aclu.org
avaldez@aclu.org


*Pro hac vice application forthcoming.*

*Attorneys for Plaintiffs*